## John W. Keyser *v.* John B. Reilly, Appellant.

*Contract—Evidence—Burden of proof—Question for jury.*

In an action to recover a specified sum which the plaintiff alleged that the defendant agreed to pay him for negotiating the sale of certain property, the burden of proving the special contract is upon the plaintiff, and if he testifies fully and positively to the making of the contract, and the defendant contradicts him, the case is for the jury, and a verdict and judgment for plaintiff will be sustained.

*Contract—Consideration—Verdict.*

Where the defense to an action upon a contract for compensation for

services rendered in effecting a sale of property is a denial of the alleged contract, and also that, at the time the services were performed, the plaintiff was in defendant's employ, and that the services were within the scope of his employment, so that, even if the contract had been made, it was without consideration, a verdict for plaintiff necessarily implies, not only that such special contract had been made, but also that it was for special services rendered for which no compensation was otherwise provided.

Argued Jan. 4, 1899. Appeal, No. 133, Jan. T., 1898, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1896, No. 878, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Affirmed.

Assumpsit on a contract. Before BRÉGY, J.
The facts appear by the opinion of the Supreme Court.

The court below charged as follows:
This is a case in which there is very little for the court to say. It is a matter entirely for you.
[The plaintiff's claim is based upon an alleged special promise to pay him $1,000 to effect the sale of this railroad and power plant, and that this is the thing you have to consider. If that promise was made by the defendant, he will have to live up to it, because the property was sold; and if he did not make the promise, the verdict ought to be for the defendant.] [1] I might talk to you for half an hour, but that would be practically all that I would have to say to you, and therefore there is no use to waste your time, especially as the matter has been argued by counsel on both sides. You have heard the testimony of their two clients, and they have introduced things which they think corroborate them or tend to show the truth is on their side in one respect or another. Look at all those things and see whether they do really throw any light upon the matter, and then do the only thing you can do, and that is record what your honest judgment is. [If, after considering what has been said, you honestly believe Mr. Reilly made that promise to Mr. Keyser, of that $1,000, your verdict ought to be for the plaintiff for $1,000 with interest. If you believe he did not make that promise, your verdict ought to be a clear verdict for the defendant. That is all.] [2]

Verdict and judgment for plaintiff for $1,170. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*M. Hampton Todd*, for appellant, cited Elkins, Bly & Co. v. McKean, 79 Pa. 463; Carr v. Chartiers Coal Co., 25 Pa. 337; Harris v. Carter & Brooks, 3 Ellis & Blackburn, 559.

*D. Webster Dougherty*, for appellee.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 8, 1899:

In his statement of claim, the plaintiff, among other things, avers, " that in the month of March, 1895, the defendant agreed with plaintiff that if he could succeed in negotiating a sale of certain corporate properties, in which the defendant was then interested, to Messrs. Craig and Beebe for the sum of $160,000, he, the defendant, would pay plaintiff the sum of $1,000; . . . . that thereupon he accepted said offer and entered into negotiations with Craig and Beebe for the purchase, by them, of said properties; that, as agent for defendant, he was offered by Craig and Beebe $150,000 for said properties, which offer he forthwith communicated to the defendant, who then and there agreed to accept the same, and also promised to pay plaintiff $1,000 for his services when the sale was consummated; that shortly afterwards the sale was consummated by transfer of the properties to the purchasers and payment by them of the purchase money to the defendant, and that the latter, although often requested to pay the said sum of $1,000 to the plaintiff for his services in effecting the sale, refused and still refuses to do so.

Other items of claims are embraced in the statement, but, not being pressed, the controversy was restricted to his claim under the special contract above stated.

Plaintiff testified fully and positively to the making of said special contract, and also to the complete performance of the same on his part. As to his agency in conducting the negotiations which led up to the sale to Craig and Beebe for the consideration of $150,000, he was corroborated by Mr. Craig, one of the purchasers, who testified, in substance, that in connection with others he purchased the property at the price named, and

that the negotiations leading thereto were conducted by the plaintiff. In reply to a question as to what he and Keyser did, he testified: "I met Mr. Keyser on the train leaving Philadelphia some time in February, is my impression, 1895; he approached me with a view to having us entertain the purchase of the road and fix the price at $160,000, which he thought he could consummate the deal at. I told him we would not consider that price, but we would consider $150,000. He said he would meet with his party and let me know the next day; he did not mention who the parties were. He did report the next day, and arranged for a meeting with Mr. Reilly, Beebe and myself. Mr. Beebe was an associate with me, and the purchase of the road was consummated." We "met Mr. Reilly in pursuance of that agreement and the sale was consummated."

While it was virtually conceded by the defendant that the plaintiff participated in the negotiations which resulted in the sale to Craig and Beebe, he denied that he promised to pay him for his services, and testified, in substance, that, at the time the sale was effected, and before as well as afterwards, plaintiff was in his employ, and whatever services he rendered, including any that he may have rendered in connection with sale, were within the scope of his said employment, and that the alleged special contract, assuming it to have been made, was without consideration.

The burden was on the plaintiff to prove to the satisfaction of the jury the special contract under which he claimed, and that he complied with its terms and conditions. If the evidence relied on by him was believed by the jury, he was prima facie entitled to their verdict; but, before reaching that conclusion they would necessarily have to pass upon the conflicting testimony, including the credibility of defendant's evidence to the effect that he never agreed to pay plaintiff anything for his services in effecting the sale, etc. The disputed questions of fact thus presented were for the exclusive consideration of the jury, to whom the case was submitted under these instructions: "The plaintiff's claim is based upon an alleged special promise to pay him $1,000 to effect the sale of this railroad and power plant, and that this is the thing you have to consider. If that promise was made by the defendant, he will have to live up to it, because the property was sold; and if he did not make the

promise, the verdict ought to be for the defendant. If after considering what has been said, you honestly believe Mr. Reilly made that promise to Mr. Keyser, of $1,000, your verdict ought to be for the plaintiff for $1,000, with interest. If you believe he did not make that promise, your verdict ought to be a clear verdict for the defendant."

Acting under these instructions, with all the evidence before them, the jury rendered a verdict in favor of the plaintiff for the full amount of his claim, including interest. By necessary implication, they found as a fact that the special contract was made as claimed by the plaintiff, and that its terms and conditions were complied with by him. The fact, thus established by the verdict, that the defendant did make the alleged special contract, points also to the conclusion that he was making provision for the rendition of special services for which no compensation was otherwise provided. It would be quite uncharitable to the defendant to suppose that he made the contract in question knowing that there was no consideration to support it.

No instructions were requested by the defendant on the alleged want of consideration to support the special contract. If such instructions had been asked, we think the court would have been justified in refusing them on the ground that there was no sufficient evidence to go to the jury on that subject. The evidence as to the contractual relations between the plaintiff and defendant, at and about the time that the sale to Craig and Beebe was effected, was too vague and uncertain to warrant a finding that the special services rendered by the defendant in effecting the sale were within the scope of any contract between the parties at that time, other than the contract on which this action is founded.

The defendant has no just reason to complain of the learned trial judge's charge. The specifications of error are not sustained.

Judgment affirmed.